1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9               FOR THE DISTRICT OF IDAHO

10                  ----oo0oo----

11   JUNE L. PLAYFAIR,
                                    NO. CIV. 09-375
12            Plaintiff,

13       v.                         MEMORANDUM AND ORDER RE:
                                    MOTION FOR PRELIMINARY
14                                  INJUNCTION
     SOUTH LEMHI SCHOOL DISTRICT 292
15   BOARD OF TRUSTEES; VON BEAN,
     a board member; JAMES WHITTAKER,
16   a board member; CARL LUFKIN, a
     board member; ROSS GODDARD, a
17   board member; and DEB FOSTER, a
     board member;
18
              Defendants.
19   _____/

20                  ----oo0oo----

21            Plaintiff June L. Playfair initiated this action to

22   enjoin a scheduled hearing about the non-renewal of her contract

23   with South Lemhi School District No. 292 ("district").  Plaintiff

24   specifically alleges that the defendant Board of Trustees of the

25   district ("Board") cannot fairly preside over her due process

26   hearing because it already made a decision to terminate her

27   employment during an executive session and with a public vote at

28   a board meeting on May 11, 2009.

1       The due process hearing at issue was originally
2   scheduled for June 4, 2009, and, after being rescheduled at least
3   twice, was set for August 4, 2009, at 2:00 p.m.  On July 23,
4   2009, plaintiff filed a verified complaint in state court,
5   alleging violations of her federal and state due process rights
6   and seeking to enjoin defendants from "sitting and participating
7   as decision makers" for her hearing.  (Compl. 4.)  Pursuant to 28
8   U.S.C. § 1441(b), defendants removed the case to federal court on
9   August 3, 2009, and plaintiff filed a motion for a temporary
10  restraining order and/or preliminary injunction the same day.

11      On August 4, 2009, Judge Winmill granted plaintiff's
12  motion for a temporary restraining order and, pursuant to Federal
13  Rule of Civil Procedure 65(c), required plaintiff to post a $500
14  security bond.  Judge Winmill's Order temporarily restrained the
15  Board "from conducting a Due Process Hearing concerning
16  Plaintiff's continued employment with School District No. 292
17  until such time as this Court can take further evidence and
18  determine whether the School District No. 292 board members
19  should be permanently enjoined from conducting the hearing
20  currently scheduled for August 4, 2009."  (Aug. 4, 2009 Order at
21  6.)

22      On August 10, 2009, the undersigned held an evidentiary
23  hearing on plaintiff's motion for a preliminary injunction.  At
24  the hearing, the court received exhibits; heard testimony from
25  plaintiff, the Board defendants--which include Von Bean, James
26  Whittaker, Carl Lufkin, Ross Goddard, and Deb Foster--and the
27  district superintendent, Dr. Susan Noland; and heard oral
28  argument from counsel.  This memorandum constitutes the court's

1  findings of fact and conclusions of law following the hearing.

2        In his Order granting plaintiff's temporary restraining
3  order, Judge Winmill reasoned that, "without evidence about the
4  goings on during the executive session, which defendants could
5  have provided, the Court and Plaintiff are without all the
6  potentially relevant information needed to determine whether the
7  board members already made a determination regarding Ms.
8  Playfair's contract."  (Id. at 5.)  Based in part on this lack of
9  information, Judge Winmill concluded that plaintiff had satisfied
10 her burden of establishing that she will likely suffer a denial
11 of due process in the absence of preliminary relief.  The
12 evidence presented at the August 10, 2009 hearing supports Judge
13 Winmill's initial finding that the Board likely reached a
14 decision about plaintiff's continued employment at the May 11
15 board meeting and thus merits granting plaintiff's motion for a
16 preliminary injunction.

17    Events Leading to and the Actions Taken at the Board Meeting

18        Since 1985, plaintiff has been a teacher at Leadore
19 School, which is within the district and serves the small farming
20 town of Leadore in Lemhi County, Idaho.  The town itself has
21 approximately 100 to 120 citizens and approximately thirty to
22 thirty-two students are currently enrolled in high school at
23 Leadore School, which makes it the smallest public high school in
24 Idaho.  About twenty years ago, plaintiff instituted the
25 Vocational Agriculture Program ("Vo-Ag Program") at the high
26 school and has operated and taught the courses within that
27 program since its creation.  Given plaintiff's role within the
28 Vo-Ag Program, plaintiff and members of the Board view plaintiff

3

1  and the Vo-Ag Program as essentially one in the same.

2        In 2008, Noland became the new superintendent of the
3  district and learned that the district was facing financial
4  challenges.  Based in part on decreased enrollment and state
5  funding, the district allegedly faced a shortfall of
6  approximately $112,000 for the 2009-2010 school year.  In light
7  of its deficit, the district allegedly began discussing programs
8  that might be cut and, in April 2009, held a public hearing to
9  address possible reductions.

10        Around the same time, the Agriculture Advisory
11  Committee, which is responsible for discussing the direction of
12  the Vo-Ag Program, also held meetings to discuss the Vo-Ag
13  Program.  At these meetings, the Vo-Ag Committee Members, which
14  included plaintiff, Bean, and Foster, discussed the possibility
15  of modifying the Vo-Ag Program to include more industrial arts,
16  such as mechanics and welding courses.  At these meetings, some
17  of which Noland attended, the committee also discussed the
18  possibility of plaintiff taking training courses over the summer
19  to enable her to teach the mechanic and welding courses.  When
20  plaintiff applied to take this training, however, Noland
21  allegedly denied her request.

22        On May 11, 2009, the Board held a public meeting and
23  issued an agenda in advance of the meeting.  (Rammell Aff. Ex.
24  B.)  Among other "Business Items" listed on the agenda, the
25  agenda included "Recommendations for Vo-Ag Program": the "Ag
26  Advisory Committee Report" by Foster and the Superintendent's
27  recommendation.  (Id.)  The agenda also indicated that an
28  Executive Session would be held to discuss "Personnel - Ag" and

4

1 | "Ag Supplemental." (Id.) Prior to the scheduled board meeting,
2 | some of the board members met for a private work session for
3 | about thirty minutes, at which time budgetary issues were
4 | discussed.

5 | Although the agenda indicated that Foster would deliver
6 | the Ag Advisory Committee Report, she subsequently recused
7 | herself from delivering the report and participating in the
8 | discussions and executive session about the Vo-Ag Program and
9 | plaintiff's position. (Id. at Ex. A at 2.) Instead of Foster,
10 | Bean delivered the Ag Advisory Committee Report, which
11 | "recommended changing from Ag Science Format to AG Mechanics-AG
12 | Shop Program for a higher quality project oriented program."
13 | (Id.)

14 | Prior to the planned discussion about the Vo-Ag Program
15 | and plaintiff's position, Noland also "presented a proposed class
16 | schedule," which the Board approved. (Id.) When plaintiff
17 | requested a copy of the schedule, she learned for the first time
18 | that her name was omitted as a teacher. The schedule's omission
19 | of plaintiff as a teacher conflicted with a schedule Noland had
20 | given plaintiff that morning during an evaluation. When
21 | plaintiff asked Noland why her name was excluded, Noland told her
22 | that, "You are off for a reason."

23 | After voting to approve Noland's schedule, Noland
24 | "recommended eliminating the AG Program due to lack of student
25 | interest as demonstrated by class pre-registration for the 2009-
26 | 2010 school year sufficient to justify offering the program."
27 | (Id. at 3.) Whittaker made a motion to table Noland's
28 | recommendation until after the executive session, and the motion

1  carried.   (Id.)   The Board then began an executive session at
2  9:55 p.m., indicating in the resolution that the purpose of the
3  executive session was "Personnel" and authorized by Idaho Code
4  section 67-2345(1)(b).   (Id.)

5          After the Board met in executive session for
6  approximately ten to fifteen minutes, Bean approached plaintiff
7  in a hallway and asked her whether she wanted to speak on her
8  behalf to the Board.  When plaintiff indicated she was unsure
9  about what she would say, Bean suggested she take five to ten
10 minutes to collect her thoughts and then join the Board.  After
11 about five to ten minutes, plaintiff joined the Board for the
12 executive session and discussed the Vo-Ag Program and her
13 position with the Board for approximately fifteen to twenty
14 minutes.   The Board then finished the executive session without
15 plaintiff and reconvened the public session at 10:30 p.m.  (Id.)

16         Immediately after reconvening the public session, Bean
17 made a successful motion to "bring [the Advisory Committee's]
18 recommendation for the VO-AG program off the table."  (Id.)
19 Following that action, the Board voted to "approve the
20 recommendation of Superintendent Noland to eliminate the Ag
21 Science Program due to lack of interest and enrollment in the
22 program."   (Id.)  Noland then "made a recommendation of
23 non-renewal of Mrs. June Playfair[']s contract for the reason of
24 eliminated program and is not certified or qualified for any
25 position open and advertised."  (Id.)  In response to Noland's
26 recommendation, the minutes memorialized that the Board voted to
27 accept it:

28         Von Bean made a motion to accept the recommendation of

6

1   Dr. Noland. Carl Lufkin seconded the motion. The motion
2   carried.    Dr. Noland recommended non-renewal of the
    Supplemental AG Contract.  Carl Lufkin made a motion to
3   accept the recommendation of Dr. Noland of non-renewal of
    Supplemental Contract.   Von Bean seconded the motion.
4   The motion carried.  A notice will be promptly provided
    to Mrs. Playfair of her right to a due process hearing
5   which is set for June 4th unless Mrs. Playfair waives her
    right to a hearing or a change of the date of that
6   hearing is necessary.

7   (Id. at 3-4.)

8        Sometime that evening, plaintiff received a "Notice of
9   Nonrenewal of Contract for School Year 2009-2010" signed by Board
10  Chairperson Goddard and a "Notice of Hearing."  (Id. Ex. C, E.)
11  In the three-paragraph body of the notice of non-renewal,
12  plaintiff was informed that "the Superintendent has recommended
13  that you NOT be offered a contract for the 2009-2010 school
14  year."  (Id. Ex. C.)  The notice did not indicate or suggest that
15  the Board voted on the Superintendent's recommendation, and
16  Noland claims that she informed plaintiff that evening "that she
17  had not been terminated, but only that a recommendation had been
18  made not to renew her contract."  (Noland Aff. ¶ 14.)

19       In response to the apparent indication in the meeting
20  minutes that the Board voted to accept the Superintendent's
21  recommendation, each of the voting board members submitted an
22  affidavit stating that the Board voted only to "accept the
23  Superintendent's recommendation to hold a hearing, and scheduled
24  a due process hearing accordingly."  (Von Bean, Lufkin,
25  Whittaker, & Goddard Affs. ¶ 7 (emphasis added); see Foster Aff.
26  ¶ 3 (indicating that she recused herself from the decision about
27  the Vo-Ag Program or recommendation of non-renewal of plaintiff's
28  contract because of her "previous encounters" with plaintiff as a

7

1  parent).)   At the hearing, the board members essentially offered
2  the same testimony.  Defendants also contend that plaintiff did
3  not believe her position was terminated at the May 11 meeting
4  because her husband subsequently placed an ad in the paper
5  announcing the public hearing about the "[o]pen termination
6  hearing for [the school's] Agricultural Program Teacher June
7  Playfair."  (Noland Aff. Ex. D.)

8          As school is scheduled to start on September 1, 2009,
9  the court expedited its hearing and ruling on plaintiff's motion
10 for a preliminary injunction.

11                  Preliminary Injunction Standard

12          "A plaintiff seeking a preliminary injunction must
13 establish that he is likely to succeed on the merits, that he is
14 likely to suffer irreparable harm in the absence of preliminary
15 relief, that the balance of equities tips in his favor, and that
16 an injunction is in the public interest."  Winter v. Natural Res.
17 Defense Council, Inc., 129 S. Ct. 365, 374 (2008) (citing Munaf
18 v. Geren, 128 S. Ct. 2207, 2218-19 (2008); Amoco Prod. Co. v.
19 Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo,
20 456 U.S. 305, 311-12 (1982)).  In Winter, the Court reaffirmed
21 the traditional standard for granting a preliminary injunction
22 and rejected the Ninth Circuit's variations of the standard, such
23 as requiring only a "possibility" of irreparable harm if the
24 plaintiff shows a strong likelihood of prevailing on the merits.
25 Id. at 375.

26          The Winter Court further emphasized that "[a]
27 preliminary injunction is an extraordinary remedy never awarded
28 as of right."  Id. at 376.  "In each case, courts 'must balance

                              8

1  the competing claims of injury and must consider the effect on
2  each party of the granting or withholding of the requested
3  relief.'"  Id. (quoting Amoco Prod. Co., 480 U.S. at 542).  "'In
4  exercising their sound discretion, courts of equity should pay
5  particular regard for the public consequences in employing the
6  extraordinary remedy of injunction.'"  Id. at 376-77 (quoting
7  Romero-Barcelo, 456 U.S. at 312).

8                    Plaintiff's Due Process Rights

9          "It is well-settled that the Due Process Clause
10 prevents the state from depriving a plaintiff of a protected
11 property interest without 'a fair trial in a fair tribunal.'"
12 Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995) (quoting In
13 re Murchison, 349 U.S. 133, 136 (1955)); see Brady v. Gebbie, 859
14 F.2d 1543, 1554 (9th Cir. 1988) ("[T]he fundamental requirement
15 of due process is an opportunity to be heard at a meaningful time
16 and in a meaningful manner.") (citing Mathews v. Eldridge, 424
17 U.S. 319, 333 (1976)) (emphasis added).  "In attempting to make
18 out a claim of unconstitutional bias, a plaintiff must 'overcome
19 a presumption of honesty and integrity' on the part of
20 decision-makers" and "show that the adjudicator 'has prejudged,
21 or reasonably appears to have prejudged, an issue.'"  Stivers, 71
22 F.3d at 741 (quoting Withrow v. Larkin, 421 U.S. 35, 46 (1975);
23 Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992))
24 (emphasis added).

25         A hearing does not comport with due process if it "'is
26 totally devoid of a meaningful opportunity to be heard'" because
27 the decision-makers have predetermined the outcome of the
28 hearing.  Matthews v. Harney County, Or., Sch. Dist. No. 4, 819

                                9

1 | F.2d 889, 893-94 (9th Cir. 1987) (quoting Washington v. Kirksey,
2 | 811 F.2d 561, 564 (11th Cir. 1987)); see id. ("'Due process of
3 | law [is not present] where the state has gone through the
4 | mechanics of providing a hearing, but the hearing is totally
5 | devoid of a meaningful opportunity to be heard.'") (alteration in
6 | original); see also Brady, 859 F.2d at 1554 (upholding a jury
7 | verdict finding a due process violation when the "jury could
8 | reasonably infer from th[e] evidence that [the decision-maker]
9 | had made up her mind about [plaintiff] before the meeting and
10 | would have disregarded any evidence which [plaintiff] presented
11 | in mitigation or rebuttal"); Bakalis v. Golembeski, 35 F.3d 318,
12 | 326 (7th Cir. 1994) ("Certainly, a body that has prejudged the
13 | outcome cannot render a decision that comports with due
14 | process."); see also Johnson v. Bonner County Sch. Dist. No. 82,
15 | 887 P.2d 35, 39 (Idaho 1994) ("[W]e conclude that upon a showing
16 | that there is a probability that a decisionmaker in a due process
17 | hearing will decide unfairly any issue presented in the hearing,
18 | a trial court may grant an injunction to prevent the
19 | decisionmaker from participating in the proceeding.").

20 |      At the same time, however, "[m]ere familiarity with the
21 | facts of a case gained by an agency in the performance of its
22 | statutory role does not[] disqualify a decisionmaker."
23 | Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n,
24 | 426 U.S. 482, 493 (1976). "Nor is a decisionmaker disqualified
25 | simply because he has taken a position, even in public, on a
26 | policy issue related to the dispute, in the absence of a showing
27 | that he is not 'capable of judging a particular controversy
28 | fairly on the basis of its own circumstances.'" Id. (quoting

1  United States v. Morgan, 313 U.S. 409, 421 (1941)); see Withrow,
2  421 U.S. at 55 ("The mere exposure to evidence presented in
3  nonadversary investigative procedures is insufficient in itself
4  to impugn the fairness of the board members at a later adversary
5  hearing."); accord Johnson, 887 P.2d at 38.

6          Here, the parties agree that plaintiff has a protected
7  property interest in her position with the district, that she
8  will suffer irreparable harm if she is deprived of that property
9  interest without due process of law, and that she is entitled to
10 a hearing.[1] The parties dispute only whether the Board made a
11 decision about plaintiff's continued employment at the May 11,
12 2009 board meeting and whether the Board can serve as a "fair
13 tribunal" over plaintiff's subsequent due process hearing.

14              The Board Reached a Decision on May 11, 2009

15         In light of the testimony at the hearing and the board
16 minutes, the court finds that the Board voted to terminate the
17 Vo-Ag Program and plaintiff's position on May 11, 2009, and
18 plaintiff is thus likely to succeed on her due process claims.

19

20        [1]    With a public employment property interest, the Supreme
   Court has held that a pre-termination "hearing" is required to
21 serve as an "initial check," but it "need not be elaborate" if
   the employee is entitled to a full post-termination hearing.
22 Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985);
   see also Mathews, 424 U.S. at 334-35 (establishing the balancing
23 test to determine what process is due in an individual case).
   Because defendants contend that plaintiff's position was not
24 terminated at the May 11, 2009 board meeting, they do not argue
   that the brief May 11, 2009 executive session at which plaintiff
25 was given approximately five to ten minutes notice that she could
   speak on her behalf served as a pre-termination hearing and that
26 the August 4, 2009 hearing would have served as a post-
   termination hearing. See generally Memphis Light, Gas & Water
27 Div. v. Craft, 436 U.S. 1 (1978) ("The purpose of notice under
   the Due Process Clause is to apprise the affected individual of,
28 and permit adequate preparation for, an impending 'hearing.'")

                                11

First, prior to even discussing the Vo-Ag Program or plaintiff's position, Noland distributed--and the Board approved--a class schedule for 2009-2010 that omitted the Vo-Ag Program and plaintiff's position.  Second, in identifying its reason for holding an executive session, the Board relied on Idaho Code section 67-2345(1)(b), which authorizes executive sessions "[t]o consider the evaluation, dismissal or disciplining of, or to hear complaints or charges brought against, a public officer, employee, staff member or individual agent, or public school student."  Third, the minutes unequivocally indicate that the Board voted to "accept" the Superintendent's recommendation for the non-renewal of plaintiff's contract.  Lastly, despite the conclusion of the pertinent executive session at 10:30 p.m. and the adjournment of the board meeting at 11:10 p.m., the Board still managed to give plaintiff a typed, three-paragraph notice of non-renewal that same evening, which suggests that the letter might have been prepared before the board meeting or during the executive session.

The board members' representations that they were voting only about whether to hold a hearing is also inconsistent with section 33-513, which provides that, "[u]pon receipt" of a notice of non-renewal of a contract from the Superintendent, the board "shall give the affected employee written notice of the allegations and the recommendation of discharge, along with written notice of a hearing before the board prior to any determination by the board of the truth of the allegations." Idaho Code § 33-513(5)(b) (emphasis added).  Under this mandatory language, the Board thus lacked discretion to vote on whether to

12

1  hold a hearing and any vote to do so would appear to be
2  meaningless.

3       In finding that the Board's decision to terminate the
4  Vo-Ag Program and plaintiff's position violated plaintiff's due
5  process rights, the court does not find that the board members
6  acted maliciously or with the intent to deprive plaintiff of her
7  constitutional rights.  The court believes that the board
8  members, who are untrained in the law, felt they were following
9  the procedures in section 33-515 and only inadvertently deprived
10  plaintiff of her rights.

11       It is obvious that the Board's decision to accept
12  Noland's recommendation not to renew plaintiff's contract cannot
13  stand.  Similarly, as the board members viewed plaintiff's
14  position as essentially synonymous with the Vo-Ag Program, its
15  decision to terminate that program suffers from the same
16  constitutional deficiencies.  Nonetheless, finding that the
17  Board's decision to terminate the Vo-Ag Program and plaintiff's
18  position deprived plaintiff of due process far from resolves this
19  case because the court must still determine how to remedy
20  plaintiff's constitutional injury.  The more difficult issue,
21  therefore, is determining the equitable remedy the court should
22  fashion to ensure plaintiff is afforded due process and the
23  public's interest is not harmed.  See Winter, 129 S. Ct. 365 at
24  376-77 ("'In exercising their sound discretion, courts of equity
25  should pay particular regard for the public consequences in
26  employing the extraordinary remedy of injunction.'" (quoting
27  Romero-Barcelo, 456 U.S. at 312)).
28  ///

13

1      Determining the Proper Equitable Remedy

2          The court has considered the various suggestions
3   plaintiff's counsel proposed at oral argument, including having
4   the matter heard by the Lemhi County Commissioners, by another
5   board of a school district of comparable size, or by some ad hoc
6   committee of impartial citizens.  Although initially appealing,
7   none of these remedies are appropriate or satisfactory and all of
8   them pose significant risks to the public's interests.  First,
9   judicially empowering another body to decide the district's
10  course offerings and employees would usurp the legislature's
11  delegation of authority and potentially violate the rights of the
12  citizens who elected the board members to make such decisions.
13  See Idaho Code § 33-513(5).  Cf. Hortonville Joint Sch. Dist. No.
14  1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 493-94 (1976) ("The
15  Fourteenth Amendment permits a court to strip the [school] Board
16  of the otherwise unremarkable power [to discharge employees that]
17  the Wisconsin Legislature has given it only if the Board's prior
18  involvement in negotiating with the teachers means that it cannot
19  act consistently with due process.").

20          Second, not only would an ad hoc body be untrained in
21  and unaware of the multitude of considerations required to make
22  such policy, education, and budgetary decisions, such a body
23  would be wholly unaccountable to the relevant constituents.  The
24  citizens in Lemhi would thus be compelled to follow a decision
25  about what classes are taught in their schools and who teaches
26  their children that is handed down by an artificially empowered
27  body that is neither accountable to nor elected by the citizens
28  of Lemhi.  This court is not willing to use its equitable powers

14

1 │ to displace the system of representative government at the local
2 │ level in order to remedy a constitutional violation.[2]

3 │       The court is thus left with a practical choice between
4 │ ordering the Vo-Ag Program and plaintiff reinstated for either an
5 │ unspecified or specified period of time[3] or allowing the Board to
6 │ render a decision after providing plaintiff a full and fair
7 │ opportunity to be heard. Consideration of the first alternative
8 │ raises several major concerns. First, as it is undisputed that
9 │ the district's funding is unable to meet its current obligations,
10 │ reinstating the Vo-Ag Program and plaintiff's position would
11 │ inevitably require the district to make cuts in other programs or
12 │ services. While continuing the Vo-Ag Program and plaintiff's
13 │ position may very well be in the public's interest, this court is
14 │ neither able to assess which programs or services would best
15 │ serve the public interest nor able to predict the ripple effects
16 │ of such an injunction. Second, any injunction ordering the
17 │ reinstatement of the Vo-Ag Program and plaintiff's position would
18 │ have to be subject to reconsideration at some point. Not only
19 │ would this force the court to select an arbitrary date that

20 │

21 │   [2]    As elected officials of Lemhi County, the County
     │ Commissioners come closest to avoiding the court's concerns about
22 │ non-elected officials rendering the decision; however, requiring
     │ them to make the decision does not address the court's concerns
     │ about their unfamiliarity with the competing policy, education,
23 │ and budgetary issues and raises additional concerns because one
     │ of the County Commissioners is plaintiff's neighbor.
24 │

25 │   [3]    The court refers to reinstatement of the Vo-Ag Program
     │ and plaintiff's position together based on the witnesses'
     │ impressions that the Vo-Ag Program and plaintiff's position are
26 │ essentially synonymous. The court recognizes and intends its
     │ analysis to include the varying injunctions that could be issued
27 │ or decisions that could be made, such as renewing plaintiff's
     │ contract to teach courses outside of the Vo-Ag Program or within
28 │ a modified Vo-Ag Program.

1  cannot account for how circumstances might change, it would also
2  necessarily invite further litigation as to whether the
3  circumstances at some unpredictable date had sufficiently
4  changed.

5          While allowing the Board to render a decision after a
6  fair hearing also poses concerns, the concerns are more readily
7  reconciled and strike the fairest balance between protecting
8  plaintiff's due process rights and the public's interests.  Many
9  of the concerns plaintiff identifies with having the Board render
10  a decision do not rise to the level of unconstitutional bias and
11  would exist even if the Board had not rendered a decision on May
12  11, 2009.  These concerns include the fact that plaintiff's and
13  the board members' children attend school together, plaintiff has
14  taught the board members' children, and three of the board
15  members attend church together.  These realities are unavoidable
16  in governing bodies that are run by elected members of the
17  community and are virtually inescapable in a small town with less
18  than 150 citizens.

19          Aside from board member Foster, who recused herself
20  because of personal reasons, neither plaintiff nor the board
21  members suggested that any of the voting board members questioned
22  plaintiff's teaching abilities, had unfavorable impressions of
23  her, or harbored a personal bias against her.  At most, plaintiff
24  and some of the witnesses suggested that "rumors" have resulted
25  from the May 11, 2009 board meeting.  Vague rumors that one or
26  more board members might have heard do not raise to the level of
27  unconstitutional bias.  See Stivers, 71 F.3d at 741.

28          The second type of concern raised by plaintiff comes

16

1  within the concept that, once individuals have made a decision,
2  they cannot easily change their minds. While there is not an
3  easy answer to this problem, the board members are public
4  servants who took an oath to act fairly, and they make quasi-
5  judicial decisions on a regular basis. See Withrow, 421 U.S. 35
6  at 55 ("Without a showing to the contrary, state administrators
7  'are assumed to be men of conscience and intellectual discipline,
8  capable of judging a particular controversy fairly on the basis
9  of its own circumstances.'"). Most importantly, after observing
10 these individuals at the hearing, the court has confidence that
11 they are willing and able to render a fair decision untainted by
12 their previous discussions or decisions. The testimony and
13 demeanor of the board members during the hearing showed that they
14 take their jobs seriously and work hard, without pay, to serve
15 the community and want to do the right thing. Each board member
16 also testified that he or she could be open-minded and would be
17 willing to render a decision different than the decision reached
18 on May 11, 2009, if presented with different evidence.

19         It will be incumbent on each of the members of the
20 Board to assess their own state of mind and satisfy themselves
21 that they can be open-minded and fair and that they will
22 disregard their previous decision or, at a minimum, treat it as
23 only a tentative decision. If any of them have any doubt that
24 they can do that or any question about their ability to reach a
25 fair decision in light of all the evidence, it would be their
26 duty to recuse themselves from participation in the due process
27 hearing as Foster did.

28         The court is therefore confident that the individual

17

1 board members are fully capable and willing to disregard the
2 decision they made on May 11, 2009, and preside over plaintiff's
3 due process hearing with impartiality and an open mind.  See
4 Withrow, 421 U.S. at 47-55 (discussing cases when, consistent
5 with due process, an administrative or judicial decisionmaker
6 investigated or rendered a decision on an issue and also presided
7 over a subsequent due process hearing); Ferguson v. Bd. of Trs.
8 of Bonner County Sch. Dist. No. 82, 564 P.2d 971 (Idaho 1977)
9 (holding that, despite an improper notice that suggested the
10 school board had already decided to discharge plaintiff, allowing
11 the school board to conduct the due process hearing comported
12 with due process because "the record suggests that the board was
13 prepared to deal fairly and openmindedly with the issue").

14          At that hearing, the board members should listen to and
15 consider all of the relevant evidence so as to make an informed
16 decision about whether the Vo-Ag Program will be offered for the
17 2009-2010 school year and whether plaintiff's contract to teach
18 the Vo-Ag Program, a modified Vo-Ag Program, or different classes
19 will be renewed.  For example, plaintiff has indicated that she
20 wishes to present evidence about 1) the number of students who
21 are interested in continuing in the Vo-Ag Program; 2) the annual
22 cost of the Vo-Ag Program; 3) testimony from community members
23 about improper considerations that affected Noland's
24 recommendation or any board member's prior decision to terminate
25 the Vo-Ag Program or plaintiff's position; 4) other positions
26 that plaintiff may be qualified to teach; and 5) plaintiff's
27 ability to train for and successfully run a modified Vo-Ag
28 Program.  The court is confident that, after thoughtfully

1  considering all of plaintiff's relevant evidence at the hearing,
2  the Board will reach a just and fair decision that affords
3  plaintiff due process and serves the public's interest.

4          IT IS THEREFORE ORDERED that plaintiff's motion for a
5  preliminary injunction be, and the same hereby is, GRANTED and
6  the South Lemhi School District No. 292 Board of Trustees'
7  decisions regarding the Vo-Ag Program and non-renewal of
8  plaintiff's contract are hereby set aside.  IT IS FURTHER ORDERED
9  that the Board of Trustees is enjoined from enforcing the
10  Superintendent's recommendations of non-renewal of plaintiff's
11  contract and termination of the Vo-Ag Program without holding a
12  fair hearing at which plaintiff has the opportunity to be heard
13  and the Board of Trustees is able to reach a fair and reasoned
14  decision based on all of the evidence.

15  DATED: August 12, 2009

16                                      WILLIAM B. SHUBB
17                                      UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28