U.S. DISTRICT COURT FOR THE

DISTRICT OF IDAHO

| JUNE L. PLAYFAIR, | Case No. CV09-375-BLW |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| SOUTH LEMHI SCHOOL DISTRICT 292 BOARD OF TRUSTEES; VON BEAN, a board member; JAMES WHITTAKER, a board member; CARL LUFKIN, a board member; ROSS GODDARD, a board member; and DEB FOSTER, a board member; | |
| Defendants. | |

Before the Court is Plaintiff June Playfair's Petition for Award of Attorney's Fees Pursuant to 42 U.S.C. § 1988, F.R.C.P. 54(d) and Local Rule 54.2 (Docket No. 22). For the following reasons, the Court grants the Petition.

## BACKGROUND

Playfair commenced this action, alleging violations of state statutes and of her federal and state procedural due process rights and seeking to enjoin a scheduled hearing regarding the non-renewal of her contract with South Lemhi School District No. 292. *Verified Complaint for Injunctive Relief* (Docket No. 1-

2). Specifically, Playfair alleged that the defendant School Board members ("Defendants") could not fairly preside over her non-renewal hearing, originally scheduled for August 4, 2009, because Defendants previously decided to terminate her employment at a board meeting on May 11, 2009. *Id.* Playfair sought relief in the form of "a temporary restraining order, as well as preliminary and permanent injunctive relief preventing the School Board and its individual Board members from sitting and participating as decision makers in the nonrenewal proceedings noticed against Plaintiff, Playfair." *Id.* at p. 4.

Playfair filed this action for injunctive relief in state court, *id.*, and Defendants removed the case to federal court. *Notice of Removal* (Docket No. 1). Playfair then a filed Motion for Temporary Restraining Order and/or Preliminary Injunction. *Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction* (Docket No. 2). On August 4, 2009, the Court granted Playfair's Motion for Temporary Restraining Order. *Order* (Docket No. 5). The Court held an evidentiary hearing on Playfair's Motion for Preliminary Injunction on August 10, 2009, and granted that motion on August 12, 2009. *Memorandum and Order Re: Motion for Preliminary Injunction* ("*Preliminary Injunction Order*") (Docket No. 16).

In the decision granting Playfair's Motion for Preliminary Injunction, the

Court found "that the Board voted to terminate . . . [Playfair's] position on May 11, 2009, and [Playfair] is thus likely to succeed on her due process claims." *Id.* at p. 11. Consequently, the Court ordered Defendants to set aside the non-renewal of Playfair's contract. *Id.* at p. 19.

After finding that Playfair suffered a "constitutional injury," the Court faced the difficult decision of how to fashion an equitable remedy "to ensure [Playfair] is afforded due process and the public's interest is not harmed." *Id.* at p. 13. Determining the appropriate remedy was especially challenging given that Leadore, the town in which Playfair taught, is a small farming community with less than 150 citizens. *Id.* at 3, 16. Ultimately, the Court decided that the most equitable remedy was to "allow[] the Board to render a decision after providing [Playfair] a full and fair opportunity to be heard." *Id.* at p. 15. The Court cautioned Defendants that it would be "incumbent on each of [them] to assess their own state of mind and satisfy themselves that they can be open-minded and fair," and that "[i]f any of them have any doubt that they can do that . . . it would be their duty to recuse themselves from participation in the due process hearing." *Id.* at p. 17. Pursuant to this remedy, the Court ordered that Defendants be "enjoined from enforcing the Superintendent's recommendations of non-renewal of [Playfair's] contract" until Defendants could hold a "fair hearing at which [Playfair would

have] the opportunity to be heard and the Board of Trustees [could] reach a fair and reasoned decision based on all of the evidence." *Id.* at p. 19.

On October 21, 2009, the parties filed a Stipulation for Dismissal, (Docket No. 19), and the Court entered an Order for Dismissal that same day, (Docket No. 20). Because the parties each contend that they are the prevailing party, *Stipulation for Dismissal*, p. 2 (Docket No. 19), they reserved the right to petition the Court for attorney fees and costs, *Order for Dismissal* (Docket No. 20).

## **ANALYSIS**

Each party contends that it is the "prevailing party" in this action. *Brief in Support of Plaintiff's Request for Attorney's Fees Pursuant to 43 U.S.C. § 1988, F.R.C.P. 54(d) and Local Rule 54.2* ("*Plaintiff's Petition*"), pp. 3–9 (Docket No. 22-1); *Response to Plaintiff's Petition for Attorney Fees Pursuant to 42 USC § 1988, FRCP 54(d) and Local Rule 54.2* ("*Defendants' Response*"), p. 4 (Docket No. 23). Playfair contends that she is entitled attorney fees and costs totaling $14,676.45. *Reply Brief in Support of Plaintiff's Request for Attorney's Fees Pursuant to 42 U.S.C. § 1988, F.R.C.P. 54(d) and Local Rule 54.2* ("*Plaintiff's Reply*"), p. 2 (Docket No. 24). Defendants contend that they are the prevailing part, but if the Court finds that Playfair is the prevailing party, her attorney fees are unreasonable and should be reduced. *Defendants' Response*, pp. 8–13 (Docket No.

23).

**A. Prevailing Party**

Pursuant to 42 U.S.C. § 1988(b), a court may award reasonable attorney fees and costs to "the prevailing party" in an action to enforce a provision of 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). Playfair's claim seeking to protect her federal due process rights through injunctive relief was appropriately raised under § 1983. *See Matsuda v. City & County of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008) ("[T]he Due Process Clause may give rise to a claim under § 1983.").

"The touchstone of the prevailing party inquiry [is] the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in" § 1988. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). "If the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Id.* at 791–92 (citation omitted) (alternation in original). A party is not required to "succeed on the 'central issue' in the litigation [nor] achieve the 'primary relief sought' to be eligible for an award of attorney's fees under § 1988." *Id.* at 784; *see also id.* at 790 ("[T]he 'central issue' test . . . is directly contrary to the thrust of our decision in *Hensely*."); *id.* at 791 ("In sum, the search for the 'central' and 'tangential'

issues in the lawsuit, or for the 'primary,' as opposed to the 'secondary,' relief sought, much like the search for the golden fleece, distracts the district court from the primary purposes behind § 1988 and is essentially unhelpful in defining the term 'prevailing party.'"). However, "[w]here the plaintiff's legal success on a legal claim can be characterized as purely technical or *de minimis*, a district court would be justified in concluding that" the standard for achieving "prevailing party" status has not been met. *Id.* at 792.

Guided by this framework, the Court finds that Playfair is the prevailing party in this action. Playfair, through her § 1983 action against Defendants, materially altered the legal relationship between herself and Defendants, succeeded on a significant issue in litigation, and achieved some of the benefit she sought when bringing suit. The legal relationship between Playfair and Defendants was materially altered when the Court set aside Defendants' non-renewal of Playfair's contract and ordered Defendants to hold a "fair hearing at which [Playfair would have] the opportunity to be heard." *Preliminary Injunction Order*, p. 19 (Docket No. 16). The Court's order caused Defendants to alter their process for making non-renewal decisions and, with regards to Playfair, to start the process anew without violating her rights to due process.

Playfair also succeeded on a significant issue in litigation—whether

**Memorandum Decision and Order - Page 6**

Defendants terminated her position at the May 11, 2009 board meeting. Playfair alleged that Defendants accepted the Superintendent's recommendation not to renew her contract at the May 2009 board meeting, *Verified Complaint for Injunctive Relief*, ¶ 6 (Docket No. 1-2), whereas Defendants contended that they only "voted to accept the Superintendent's recommendation to hold a *hearing*," *Affidavits of Lufkin, Whittaker, Goddard, & Von Bean*, ¶ 7 (Docket Nos. 25-2, 25-4, 25-5, and 25-6, respectively) (emphasis added). Agreeing with Playfair, the Court found "that the Board voted to terminate . . . [Playfair's] position on May 11, 2009." *Preliminary Injunction Order*, p. 11 (Docket No. 16).

Finally, Playfair achieved some of the benefit she sought when bringing this action. Playfair sought "an administrative hearing where the decision makers have not prejudged or prematurely decided any issues that will be presented at the hearing." *Verified Complaint for Injunctive Relief*, ¶ 16 (Docket No. 1-2). Due to Playfair's perception that Defendants had already made up their minds regarding the non-renewal of her contract, she specifically requested "injunctive relief preventing [Defendants] from sitting and participating as decision makers" at the hearing regarding the non-renewal of her contract. The Court granted Playfair's request for a non-biased administrative hearing by ordering Defendants to hold "a fair hearing" and "reach a fair and reasoned decision based on all the evidence."

*Preliminary Injunction Order*, p. 19 (Docket No. 16). Defendants do not argue that they acted as biased decision makers at the subsequent non-renewal hearing. *Defendants' Response* (Docket No. 23). In fact, Defendants rely on language in the Court's preliminary injunction order finding that none of them "questioned [Playfair's] teaching abilities, had unfavorable impressions of her, or harbored a personal bias against her." *Id.* at 4 (quoting *Preliminary Injunction Order*, p. 16 (Docket No. 16)).

Thus, as a result of her § 1983 action against Defendants, Playfair was awarded a fair and unbiased administrative hearing, just as she requested. The fact that Defendants sat as the decision makers at that hearing, contrary to Playfair's request for relief, does not negate the fact that Playfair achieved some, if not most, of the benefits she sought in bringing suit. Playfair was not required to achieve the exact relief she sought in order to be eligible for attorney fees under § 1988(b).

Defendants' argument that Playfair is not entitled to attorney fees under § 1988(b) because she suffered no constitutional violation and "only prevailed on a state statutory basis" is without merit, *see Defendants' Response*, pp. 5–6 (Docket No. 23), because the Court found that Playfair suffered a "constitutional injury,"

*Preliminary Injunction Order*, p. 13 (Docket No. 16).[1] Because Playfair prevailed on her § 1983 claim, not on a state statutory basis, she is entitled to seek attorney fees pursuant to § 1988(b).

Moreover, the Court finds that Defendants are estopped from arguing that Playfair "received all the process she was due" at the May 11, 2009, board meeting. *See Defendants' Response*, p. 6 (Docket No. 23); *see also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (explaining that judicial estoppel "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position"). In previous affidavits, Defendants stated that at the May 11, 2009, board meeting, they voted only to accept the Superintendent's recommendation to hold a hearing regarding the non-renewal of Playfair's contract. *Affidavits of Lufkin, Whittaker, Goddard, & Von Bean*, ¶ 7 (Docket Nos. 25-2, 25-4, 25-5, and 25-6, respectively); *see also Preliminary Injunction Order*, p. 11 n.1 (Docket No.

---

[1] Although there was never a final judicial determination on the merits that Defendants violated Playfair's due process rights because this action never proceeded past the preliminary injunction stage, the Court's order was based on the likelihood that Playfair would succeed on her constitutional claim. *Preliminary Injunction Order*, p. 11 (Docket No. 16) ("[Playfair] is thus likely to succeed on her due process claims."). The Court did not base its decision on state statutory grounds. *See id.* Moreover, the Court implicitly found that Defendants violated Playfair's rights to due process when it set aside Defendants' decision regarding the non-renewal of Playfair's contract. *See id.* at p. 19.

**Memorandum Decision and Order - Page 9**

16) ("Because [D]efendants contend that [Playfair's] position was not terminated at the May 11, 2009 board meeting, they do not argue that the brief May 11, 2009 executive session at which [Playfair] was given approximately five to ten minutes notice that she could speak on her behalf served as a pre-termination hearing . . . ."). In contrast, in response to Playfair's petition for attorney fees, Defendants now argue that Playfair received the requisite pre-termination notice and hearing at the May 11, 2009, board meeting. *Defendants' Response*, p. 6 (Docket No. 23). These positions are inconsistent and, thus, the Court will not entertain Defendants' argument that Playfair "received all the process she was due" at the May 11, 2009, board meeting.

Defendants also argue that Playfair's success in obtaining a preliminary injunction was a "technical victory" that "does not constitute prevailing party status" because Playfair's success "merely postponed the non-renewal hearing until 22 days after originally scheduled." *Defendants' Response*, p. 8 (Docket No. 23). In support of this argument, Defendants cite *Sole v. Wyner*, 551 U.S. 74 (2007). *Defendants' Response*, pp. 7–8 (Docket No. 23). In *Sole*, the plaintiff gained a preliminary injunction after an abbreviated hearing, but was denied a permanent injunction after a dispositive adjudication on the merits. *Sole*, 551 U.S. at 77–80. The Supreme Court held that "a final decision on the merits denying permanent

injunctive relief ordinarily determines who prevails in the action for purposes of § 1988(b)," and "if, at the end of the litigation, [the plaintiff's] initial success is undone and [the plaintiff] leaves the courthouse emptyhanded," then the plaintiff cannot recover attorney fees pursuant to § 1988. *Id.* at 78.

Here, unlike the plaintiff in *Sole*, Playfair was never denied a permanent injunction after a dispositive adjudication on the merits. Moreover, Playfair's success in obtaining the preliminary injunction was never "undone," and she did not "leave the courthouse emptyhanded." Instead, Playfair obtained a judicial determination that Defendants likely violated her due process rights, and a judicial order requiring Defendants to hold a fair and unbiased hearing at which Playfair would be given an opportunity to be heard. Twenty-two days later, Plaintiff received the fair hearing that she sought. Accordingly, Playfair's legal success was not merely "technical."

## B. Amount of Award

Playfair petitions the Court for an award of attorney fees and costs totaling $14,676.45.[2] *Plaintiff's Reply*, p. 2 (Docket No. 24). Defendants argue that the

---

[2] Playfair originally requested an award of $15,144.45. *Affidavit of Bron Rammell in Support of Plaintiff's Petition for Award of Attorney's Fees Pursuant to 42 U.S.C. § 1988, F.R.C.P. 4(d) and Local Rule 54.2* ("*Rammell Affidavit*"), ¶ 8 (Docket No. 22-2). After realizing that she inadvertently included $468 of non-compensable fees, Playfair reduced her request to $14,676.45. *Plaintiff's Reply*, p. 2 (Docket No. 24). However, in making the original

amount awarded should be reduced because: (1) Playfair prevailed only on state statutory claims, not on her § 1983 action, *Defendants' Response*, p. 10 (Docket No. 23); (2) Playfair obtained only limited success, which did not confer any public benefit, *id.* at p. 11, 12; and (3) Playfair did not obtain excellent results, *id.* at p. 12. Defendants do not contend that the hourly fee rate of Playfair's attorney is unreasonable, or that Playfair's attorney expended an unreasonable amount of time working on this case.[3] For the following reasons, the Court awards Playfair $14,539.95 in attorney fees and costs, pursuant to § 1988(b).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The resulting number is frequently called the "lodestar" amount. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). In determining a reasonable hourly rate, the Court considers the "experience, skill and reputation of the attorney requesting

---

calculation, Playfair miscalculated the attorney fees. *See Rammell Affidavit*, ¶ 5 (miscalculating $195 per hour multiplied by 71.9 hours, reaching a total of $14,157.00, instead of $14,020.50).

[3] Defendants did point out that Playfair's attorney included $468 of costs and fees that should not be compensable. *Defendants' Response*, pp. 9–10 (Docket No. 23). As explained in the preceding footnote, Playfair acknowledged this mistake and accordingly reduced the amount for which she petitions the Court. Beyond this mistake, Defendants do not contend that the amount of hours Playfair's attorney spent on this case is unreasonable. *See id.*

**Memorandum Decision and Order - Page 12**

fees," *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996), as well as "the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

Once the lodestar amount is determined, the Court "then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."[4] *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996) (footnote omitted). "There is a strong presumption that the lodestar figure represents a reasonable fee. Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Id.* at 363 n.8 (internal quotation marks and citation omitted).

Here, Playfair's attorney submitted affidavits and supporting evidence

---

[4] The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales*, 96 F.3d at 363 n.8 (quoting *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

**Memorandum Decision and Order - Page 13**

explaining that his hourly rate is $195 per hour; such hourly rate is reasonable and consistent with similarly qualified attorneys in the area; he has been in practice for over fifteen years; he expended 69.5 hours working on this case; his paralegal's hourly rate is $75 per hour; his paralegal expended 0.2 hours working on this case; and the costs of the case totaled $972.45. *Rammell Affidavit*, ¶¶ 2–3, Exh. A (Docket 22-2); *Supplemental Affidavit of Bron Rammell*, ¶ 6 (Docket No. 24-1) (incorporating "the factual statements in Plaintiff's Reply Brief regarding inadvertently including attorney's fees which should not be and were not intended to be claimed in this case"). Making the appropriate calculations, the Court concludes that the lodestar amount in this case is $14,539.95. The Court further concludes that the present case is not a "rare" case requiring the lodestar amount to be adjusted using the *Kerr* factors.

Defendants' argument that the attorney fee award should be reduced because Playfair prevailed only on state statutory claims, not on her § 1983 action, lacks merit. *See Defendants' Response*, p. 10 (Docket No. 23). As explained above, Playfair prevailed on her § 1983 claim and, thus, is entitled to seek attorney fees pursuant to § 1988(b).

Defendants' argument that the attorney fee award should be reduced because Playfair obtained only limited success and the result of this case did not confer any

**Memorandum Decision and Order - Page 14**

public benefit is also without merit. *See id.* at p. 11, 12. In support of this argument, Defendants cite *McCown v. City of Fotana*, 565 F.3d 1097 (9th Cir. 2009), which held that "attorney's fees awarded under 42 U.S.C. § 1988 must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *Id.* at 1103.

*McCown* is inapposite to the present case. Here, Playfair obtained substantial success because she succeeded on her § 1983 claim, as evidenced by the Court's order requiring Defendants to set aside their decision regarding the non-renewal of Playfair's contract and to hold a fair hearing at which Playfair would have the opportunity to be heard. The fact that Playfair did not receive the exact relief she requested does not negate the fact that she prevailed overall on her § 1983 claim.

Additionally, the result Playfair received does confer meaningful public benefits. First, as a result of the Court's order, Defendants became aware of the proper process for deciding not to renew an employee's contract. In order to avoid future lawsuits, Defendants will likely ensure that they give other employees proper pre-termination notice and hearing before making such decisions. This will, in turn, benefit those employees because their due process rights will not be violated, and it will not be necessary for them to bring costly § 1983 claims against

Defendants in order to protect their rights. Furthermore, other school districts in Idaho are likely to learn about Playfair's case against Defendants and be deterred from terminating employees without giving them proper pre-termination notice and hearing. Thus, as a result of this action, the policies of Idaho school districts will likely be affected, and the due process rights of school district employees will likely be protected.

Finally, Defendants' argument that the attorney fee award should be reduced because Playfair did not obtain excellent results also lacks merit. *See Defendants' Response*, p. 12 (Docket No. 23). In support of their argument, Defendants cite *Hensley*, in which the Supreme Court stated: "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . [I]n some cases of exceptional success an enhanced award may be justified. . . . If, on the other hand, a plaintiff has achieved only partial or limited success, the [lodestar amount] may be an excessive amount." 461 U.S. at 435–36. Thus, under *Hensley*, obtaining excellent results can be used by the court as a justification for *enhancing* an attorney fee award. However, *Hensley* does not stand for the proposition that if a plaintiff fails to achieve "excellent" results, but instead only achieves average results, the attorney fee award should be *reduced*.

As discussed above, Playfair achieved more than "partial or limited

success." Thus, the Court finds that, in this case, the lodestar amount represents a reasonable fee.

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED** that Plaintiff Playfair's Petition for Award of Attorney's Fees Pursuant to 42 U.S.C. § 1988, F.R.C.P. 54(d) and Local Rule 54.2 (Docket No. 22) shall be, and the same is hereby, **GRANTED**. Playfair is awarded attorney fees in the amount of $14,539.95.

DATED: **March 20, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge